Rockingham, ⎱
Nov. 5, 1952. ⎰ No. 4121.

STATE

*v.*

CASIMIR ROBERT LENOIR, *alias* ROBERT LENOIR.

*Gordon M. Tiffany,* Attorney General, *Maurice M. Blodgett,*

Deputy Attorney General, *Arthur E. Bean, Jr.,* Law Assistant, and *Thomas J. Morris,* County Solicitor (*Mr. Blodgett* orally), for the State.

*Robert J. Doyle* (by brief and orally), for the defendant.

GOODNOW, J. At the close of the State's case, the defendant's motion for a directed verdict was denied. The defendant did not rest his case upon that motion but proceeded to introduce evidence. At the close of all the evidence, he again moved for a directed verdict. The question on both of the motions for a directed verdict is whether the whole case contains sufficient evidence for the jury. *State* v. *Newman,* 74 N. H. 10, 15.

The evidence is that the defendant and his wife spent the evening of July 21, 1951, at their camp in Derry playing cards and drinking rum. Mrs. LeNoir became very drunk as indicated by the analysis of her blood made after her death showing an alcoholic concentration of thirty-four hundredths per cent by weight. The defendant's testimony is that during the evening he became drowsy and went to sleep with his head on the table on which he and his wife had been playing cards. When he awoke, he found his wife lying on the floor in the condition in which the officers later found her and thinking she was dead, he drove into Derry and notified the police. They returned with him and found the dead body of Mrs. LeNoir on the floor clad only in panties, shoes and stockings. Her dress, torn almost in half, and several pieces of her slip were found in the wood basket. She was lying on part of her slip.

The body was viewed by three doctors. The first one who was called to the scene saw one contusion with a scratch through it on the left side of the neck and another about the midline of the front of the neck. The next doctor, the medical referee, examined the body for external evidence about four hours later and found three contusions on the left side of the neck with a scratch through the middle one together with a fourth contusion on the supersternal notch. Dr. Moran who performed the autopsy about noon, did not note the contusions minutely but did observe two on the neck. In addition to the marks on the neck there were other marks on the arms and the autopsy disclosed application of further violence to the skull at a position which could probably not have been caused by a fall. The autopsy indicated death to have resulted from asphyxiation. Dr. Moran gave it as his opinion that the asphyxia-

tion was caused by a mechanical obstruction of the air passage from the mouth to the lungs applied externally by hand.

The sole question raised by the defendant as to the sufficiency of the evidence has to do with the cause of asphyxiation. Both the State and the defendant agree that the cause of death was asphyxiation. The position of the State, as stated through the opinion of Dr. Moran, is that the small hemorrhages scattered through the lungs and the extensive rupturing of the thin walls of the small air sacs of the lungs combined with the external evidence of force applied to the throat in the particular positions that the contusions appeared support a finding and opinion that asphyxiation resulted from strangulation by a hand. The defendant contends that such an opinion is not of sufficient certainty to comply with the requirement of proof of essential elements of the crime beyond a reasonable doubt. In support of this contention, the defendant points out that the autopsy failed to disclose any damage to the soft tissues of the neck and that strangulation by a hand usually causes such internal damage. The doctor called by the defendant stated that external force applied to the throat sufficient to cause strangulation would probably damage the internal tissues but even he did not conclusively rule out the possibility of strangulation by a hand without such damage. This doctor also differed with Dr. Moran concerning the significance of the evidence of ruptures of the air sacs and hemorrhages of the lungs. His opinion of the cause of asphyxiation was alcoholic paralysis of the respiratory center of the brain but with this opinion, both Dr. Moran and Dr. Jetter disagreed.

The State's medical evidence of the cause of asphyxiation is not conclusive. It is opinion evidence given by a doctor with which opinion another doctor disagrees. Such contradictions and differences of opinion cannot be avoided and in fact, are matters of common concern in all litigated cases. It cannot be said, as the defendant asserts, that because the doctors disagree as to the cause of asphyxiation, the State has failed to prove its case beyond a reasonable doubt and to exclude other possible causes than the one on which it rests its case. The resolving of the contradictions in the evidence is for the jury. There was both medical and lay evidence which pointed to acts of violence. The improbability, in view of her state of extreme intoxication, that such acts were the victim's own, combined with evidence indicating commission of the crime by the defendant, warranted the verdict returned.

Each element of an offense must be shown by the requisite quantity of proof. *State* v. *Bartlett,* 43 N. H. 224, 230. The cause of asphyxiation in this case was an essential element of proof in the State's case and not a mere evidentiary fact. *State* v. *Kilcoyne,* 82 N. H. 432, 433. There was ample evidence in support of the State's position that asphyxiation resulted from strangulation by a hand, which, if believed by the jury, was sufficient to warrant a finding of that fact beyond a reasonable doubt to the exclusion of other possible causes raised by the defendant.

In the charge to the jury, the Trial Court explained that the offense for which the defendant was being tried was manslaughter of the first degree and instructed the jury concerning the pertinent parts of the statute (R. L., c. 455 s. 8). He then charged in effect that the State claimed that the defendant choked his wife, thus causing her death, and that he was therefore guilty of the offense either because he strangled her with a design to effect her death or, if he acted without such design, because he caused her death while engaged in the commission of the offense of assault and battery. The Court expressly charged "that assault and battery is an offense within the meaning of the [first degree manslaughter] statute." The defendant excepted to this ruling and to the submission of that issue to the jury on the grounds that the offense of which proof is required to make the crime one of manslaughter of the first degree must be an offense other than the actual act which caused the death.

The statute defining manslaughter of the first degree (R. L., c. 455, s. 8) uses the words "engaged in the commission of *any* offense." (Emphasis supplied). This language does not include the offenses mentioned in R. L., c. 455, s. 1, defining murder of the first degree since manslaughter is expressly described as "not being murder" but it does include all other offenses. No exception of the offense of assault is made in the statute nor does it limit offenses to those other than the one which causes the death. If "any offense," other than one of those described in R. L., c. 455, s. 1, was committed by the defendant and was the legal cause, and not simply the occasion, of the homicide, it is sufficient to make the case one of manslaughter of the first degree. *State* v. *Rheaume,* 80 N. H. 319, 329.

*Exceptions overruled.*

All concurred.