Paul Raymond LUJAN, Jr., Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).
No. 3494.

Supreme Court of Wyoming.
Feb. 1, 1967.

Samuel A. Anderson, Laramie, for appellant.

Dean W. Borthwick, Deputy Atty. Gen., Lawrence E. Johnson, Asst. Atty. Gen., Cheyenne, Norman V. Johnson, Deputy County and Pros. Atty., Laramie, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY, and McINTYRE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Paul Raymond Lujan, Jr., with two others, Nicholas Coca, Jr., and Charles M. Borrego, was charged with second-degree murder for the killing of Scott Lyle Nelson and was tried separately, convicted of manslaughter, and has appealed. The general facts concerning the circumstances preceding the death were similar to those stated

in Coca v. State, Wyo., 423 P.2d 382: On August 16, 1965, the three defendants and deceased were present at a crowded dance at the National Guard Armory in Laramie, Nelson died following altercations between 11 and 12 p. m. precipitated by the three defendants. Details of the evidence will be mentioned in connection with the discussion of the appeal.

Four errors are charged:

1. The court erred in not granting defendant's motion for continuance on the grounds that preceding trials of the other defendants and attendant publicity rendered impossible the selection of a fair and impartial jury.

2. The court erred in not dismissing the State's action at the close of its case because of insufficient evidence that the death resulted from a criminal act of the defendant, the three accused persons not participating jointly or conspiring or acting in pursuance of a design or understanding to commit the crime charged.

3. Instruction 10, concerning a design or common understanding between the three persons charged as to the commision of the crime, was improper because of lack of evidence.

4. The court improperly refused to allow defendant's medical expert to state his opinion regarding the probable cause of Nelson's death.

■■■ It is unnecessary to discuss the alleged error of the court's refusal to grant a continuance since there is an entire failure to urge the matter in the brief and argument, and we have often said that a mere statement of error unsupported by argument or brief is insufficient ground for reversal. Condict v. Ryan, 79 Wyo. 211, 333 P.2d 684, 335 P.2d 792, 794; Schaffer v. Standard Timber Company, 79 Wyo. 137, 331 P.2d 611, 613.

The second and third charges urged for reversal in essence challenge the sufficiency of the evidence to support the conviction and focus upon two points, first, that no plan or concerted action, common purpose, or design was shown as existing between the three defendants and this defendant was not shown to be the cause of the death, which aspect challenges the propriety of the court's Instruction 10, indicating that if the defendants in pursuance of a design or understanding between them committed the crimes charged each was responsible for the acts of the others carrying out the design. This relates to the second aspect also, that the death was not in fact the result of physical action by any of the defendants.

■■■ The State does not contend that there was concert of action between the defendants Lujan, Coca, and Borrego, occasioned by actual words or an oral or written compact, but of course, as indicated in Coca v. State, supra, this was unnecessary. It was well settled by Espy v. State, 54 Wyo. 291, 92 P.2d 549, 557, a situation where the assault of two defendants on a victim resulted in his death, that if two persons engaged in such an assault are aiding or abetting each other in what they do, a previous understanding is not necessary to be shown in order to render each of them accountable for the other's acts. It follows therefore that a careful examination of the record is necessary to determine whether or not there was evidence of this at the time of the altercations immediately preceding the death of Nelson.

Defendant Lujan testified that he did not touch Nelson (although he later receded somewhat by saying that at one time, apparently after Nelson had been kicked and struck on the face, he had touched Nelson on the shoulder and indicated to him with a wink that it might be wise for him to leave). Nevertheless, numerous witnesses testified to the contrary, and there was testimony to the effect that about 11:30 p. m. the following altercation between Nelson and the defendants occurred: Nelson walked by Lujan, Coca, and Borrego, was kicked hard by Coca "in the rear." Nelson then turned around toward Coca and Lujan kicked him hard "in the rear." Nelson then turned toward Lujan and Lujan struck him

' on the face. Nelson struck no one but went and stood with his back to a wall and an off-duty patrolman, hired privately "to work" the dance, noticing the boys walked toward the group and they dispersed and mingled with the crowd that was dancing. Nelson breathed a sigh of relief as the officer walked toward him. After standing near Nelson for at least a minute, the officer left. Nelson too moved away, but was followed by Lujan, Coca, and Borrego. Coca was in back of Nelson and Lujan and Borrego in front. Nelson was again kicked by Coca, this time between the hip and rib area. Either Coca or Lujan struck Nelson between the chest and stomach area with his fist, and Nelson was hit on the side of the mouth. Nelson walked a few feet, staggered, and fell, apparently unconscious. Officers were called, there was no evidence of breathing, and artificial respiration was administered, but Nelson did not regain consciousness.

Candelaria, a person not charged, admitted that in order to show off, while the defendants were around Nelson, he walked over, spread Coca and Lujan apart, and kicked Nelson between the legs. At this time, the officer appeared, and Candelaria walked away. He testified that later while he was talking with Borrego, Borrego said that it was he who hit Nelson on the side of the mouth. According to one of the other witnesses Candelaria also said that Coca and Lujan were bragging about being "on narcotics."

■■■ From an analysis of these facts, it would appear that Instruction 10,[1] which is substantially similar to one given in the Espy case, was proper. It is true that the jury did not here find defendant guilty of the more serious crime, but whether or not the unprovoked repeated attacks of the assailants against Nelson, with the striking of blows with the fists and kicking, showed

an intention to kill was a question of fact which the jury was entitled to consider. Coca v. State, Wyo., 423 P.2d 382. Even were that not so, the brief and argument contain no substantiation of prejudicial error because of the instruction.

■■■ Concerning the proximate cause of death, the doctor who conducted the autopsy said that death was the result of asphyxia caused by vomitus in the airway. He found three bruises on Nelson's body, one on the right cheek, right malar area; second on the left chest about the fifth rib area; and the third on the side of the left hip bone. The doctor was unable to say with any degree of medical certainty what caused Nelson to vomit, but indicated that he had found no evidence of influenza or alcohol in the blood stream and that in his opinion Nelson's health prior to his death was excellent. Among other causes of vomiting he listed physical injury and emotional disturbances such as tension and stress. Defendant argues here that there is no evidence to connect the death with any blows delivered by defendant either singly or in concert with others nor competent evidence which would indicate that he was in a state of fright at the time of his death, and insists that artificial respiration applied in an irregular and faulty manner could easily have forced vomit from Nelson's stomach into his mouth where it would have been forced into the windpipe. Nevertheless, as stated in Coca v. State, Wyo., 423 P.2d 382, it is well settled that the criminal agency in felonious homicides may be established by circumstantial evidence, and this was a proper matter for the determination of the jury after a consideration of all the facts and circumstances relating to the case. Circumstances which the jury might properly have considered included Nelson's previous good health, the various blows and kicks that he received,

---

1. "You are instructed that if you believe beyond a reasonable doubt that the deceased was assaulted by Coca, Borrego and Lujan, or any of them, in pursuance of a design or understanding between them to commit the crimes of Second Degree Murder or Manslaughter as hereinbefore defined, then each is responsible for the acts of the other in carrying out such design."

his apparent attitude of relief when he escaped temporarily from his assailants, and his condition after the latest clash with Lujan, Coca, and Borrego, at which time he staggered, fell, and became immediately unconscious. There was sufficient evidence before the jury, which if believed would justify a finding that the vomitus was caused by the blows from this defendant and those who were acting with him, from the fear and excitement occasioned by their activities, or from a combination of the two. Accordingly, the charge that the court erred in not dismissing the State's action is without merit.

It is urged that the trial court committed prejudicial error in refusing to allow defendant's medical witness, Dr. Bunch, to state his opinion as to the probable cause of the death. This argument relates to different portions of the proffered testimony. In the first question to which allusion is made, the hypothetical question against which the court ruled assumed "certain facts that will be introduced in evidence." No authority is offered by defendant to show that a hypothetical question containing facts unpresented in evidence is proper, and we think could not be. State v. Alexander, 78 Wyo. 324, 324 P. 2d 831, 840 (certiorari denied 363 U.S. 850, 80 S.Ct. 1630, 4 L.Ed.2d 1733). A later hypothetical question was asked of Dr. Bunch concluding with a request for his opinion as to whether or not he could state with reasonable medical certainty that the blows which had been described, or any possible conceivable fear, or emotional disturbance that might have accompanied the blows as far as the recipient of them was concerned, was the complete producing cause of the gastric contents being aspirated into the tracheal bronchial tree. Without objection by counsel, the court stated it would not let the doctor answer the question because it invaded the province of the jury to determine the ultimate fact in the case. Since the function of expert testimony is to give a jury information as to causes and effects, the ruling is on its own terms perhaps indefensible, although, to reiterate, the jury already had before it the testimony of the doctor who had performed the autopsy that he could not state with any medical certainty the cause of the vomitus. In any event, however, the scope and conduct of examination of an expert witness is generally a matter of judicial discretion, and in this instance the question was so fraught with omissions, improper assumptions, and ambiguities, as to have been improper and objectionable. In fact, counsel for defense immediately thereafter continued the interrogation, asking for the doctor's opinion as to which more likely causes the stomach contents to be aspirated into the tracheal bronchial tree, the bruises which he had previously described or mouth-to-mouth resuscitation, "with the pressing on the stomach." [2] To this, the prosecution objected on the ground that there had been no statement of consciousness or unconsciousness of the patient or knowledge of any part of his breathing operation, and the court properly sustained an objection to the question. It was then obvious, as it had undoubtedly been previously apparent to the trial court, that the entire questioning had been unaptly based, and accordingly, that any statement of the witness would have invaded the province of the jury. Additionally, it would have been proper and perhaps even requisite for defendant to then have made an offer of proof, especially in the confused state of what was attempted to be elicited.

Careful review of the argued charges discloses no errors and the judgment must be affirmed.

Affirmed.

2. After a period of ten or fifteen minutes, the officer giving insufflation to Nelson was relieved by a boy who testified that at the same time or shortly after he took over another boy started depressing Nelson's stomach.