Nicholas COCA, Jr., Appellant
(Defendant below),

v.

The STATE of Wyoming, Appellee
(Plaintiff below).

No. 3493.

Supreme Court of Wyoming.

Feb. 1, 1967.

Samuel A. Anderson, Laramie, for appellant.

Dean Borthwick, Deputy Atty. Gen., Robert Smaha, Sp. Asst. Atty. Gen., Cheyenne, Norman. V. Johnson, Deputy County and Pros. Atty., Laramie, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Defendant was charged jointly with two others, Lujan and Borrego, with second-degree murder for the killing of Scott Lyle Nelson, was separately tried, was convicted by a jury of manslaughter, and has appealed. The basic facts relating to the death of Nelson are: On August 16, 1965, the three defendants and deceased were at a crowded dance at the National Guard Armory in Laramie. Nelson died following altercations in the armory with the three accused between 11 and 12 p.m. Borrego admitted having struck Nelson in the jaw, and Wilford Candelaria, a person not charged, admitted having kicked him between the legs. Coca denied having any physical contact with Nelson, but he and Lujan, who had gone to the dance together, were identified by various witnesses as having either hit or kicked the deceased.

Following the final altercation, Nelson walked or staggered a short distance, and dropped to the floor, apparently unconscious. It appeared to the patrolman who was summoned that Nelson was gasping for air and he started to administer mouth-to-mouth resuscitation. Gurgling noises were heard prior to the arrival of the ambulance, but the boy riding with Nelson in the ambulance said that there was some "feeling" of a pulse. Upon arrival at the hospital, at about midnight, Nelson was pronounced dead. The doctor performing the autopsy testified that the cause of death in the 17-year-old Nelson, who had previously been in excellent health, was asphyxia due to vomitus in the breathing airway and that vomiting might be caused by extreme emotional disturbance, trauma, disease, or certain other circumstances. Three bruises were found on the deceased, one on the right cheek, one on the left chest above the fifth rib, and the third over the side of the left hip.

Three errors are urged by the defendant in the appeal:

1. The overruling of a motion to examine evidence and motions for suppressions and continuance was improper and prejudicial;

2. The State's voir-dire examination of certain jurors was prejudicial; and

3. Because of insufficient evidence of defendant's guilt, the court erred in refusing to grant his motions for directed verdict, for a judgment notwithstanding the verdict, and for a new trial, which criticism encompasses the propriety both of instructions given and refused.

On the first point, defendant's counsel urges that inability to examine statements from defendant and contemplated witnesses prevented the proper preparation of his defense. Numerous cases and writings are discussed in the brief, which in general can be said to indicate that defendant's inspection of the prosecution's evidence in criminal cases may un-

der certain circumstances be permitted and that courts are now inclined to be more lenient in permitting this than in times past. However, perusal of all authority to which allusion is made indicates that any such inspection or examination either flows from clear statutes or rules providing therefor or is within the discretion of the trial court. Wyoming has neither statute nor rule nor has this court ever had occasion to discuss the matter directly at length. In State v. Vines, 49 Wyo. 212, 54 P.2d 826, 828–829, a homicide case, it was said by way of dicta, "There seems to be no rule of the common law or statute that gives a defendant the right before trial to pry into the state's case by obtaining a disclosure of its evidence, though there is authority for the view that the trial court has at least a discretionary power to permit the defendant to inspect documents or chattels for the purpose of obtaining information that will enable him to make a defense." There is no contention in this case that the trial court abused its discretion in this respect, and the circumstances of the case indicate to the contrary. In that connection, it is of some interest to observe the procedures prior to the trial. The affidavit of the county and prosecuting attorney before the district court at the time the information was there filed indicated that he had been summarily informed by the district judge that he would not permit any filing of a felony case directly in district court even though it was within the thirty-day period exempted from the requirement for preliminary examination under the provisions of § 7–124, W.S.1957. Accordingly, the prosecuting attorney on August 18 filed an information against the mentioned defendants in the justice court and proceeded with the preliminary hearing, which resulted in the justice of the peace finding that a crime had been committed and that there was probable cause shown that each of the defendants should be bound over to the district court, where information was then filed on August 30. The affidavit of the prosecuting attorney, in the justice court at the time of the hearings there, stated, "That on or about the night of August 16, 1965 at the National Guard Armory located in this county, the defendants did, while attending a dance in said armory, shove, strike with fists, and kick with their feet the person of the deceased, Scott Lyle Nelson, to such an extent and in such a severe manner as to cause him to regurgitate and fill his upper passages leading to the lungs and such matter then being inhaled into and clogging deceased's lung[s] causing his death by asphyxiation." This would seem to have been a reasonable delineation of the details concerning the crime with which each of the defendants was charged, and to have permitted the ascertainment of witnesses and the preparation of the defense.

■ At the time the information was filed in the district court some twenty-one names were endorsed thereon. On October 18, one week before the defendant Coca's trial began, defense counsel were given the names of several witnesses and on October 19 and 20 twelve more witnesses were endorsed. Simultaneously counsel for defendant filed motions for examination of "all evidence" intended to be introduced at the trial without stating any reasons therefor and filed a motion for suppression of all testimony of witnesses endorsed after the filing of the original information unless the prosecution should demonstrate that the defendant would not be injured by subsequent endorsements and at the same time filing a motion for continuance, stating, inter alia, that certain witnesses contained on the late endorsement by the prosecution could not be found and that co-operation in finding one of these witnesses had not been given by the prosecution.

Defendant concedes late endorsements of witnesses on the information have heretofore been permitted. State v. Hambrick, 65 Wyo. 1, 196 P.2d 661, 198 P.2d 969; State v. Bemis, 34 Wyo. 218, 242 P. 802; Boulter v. State, 6 Wyo. 66, 42 P. 606. Although the circumstances in each of these cases were different from the other and from the one at bar, we see no reason in

the light of such holdings to say that prejudice was thus occasioned here. From the record, it would appear that by reason of the preliminary examination, together with the affidavit of the prosecution containing a resume of the nature of the offense which was charged, the defendant was reasonably apprised of that which he would be required to meet at the trial. He had as full an opportunity to know the eyewitnesses at the dance as had the State. In denying the motions, the trial court indicated that one witness who had been endorsed would not be present and that another would be made available to the defense upon his arrival from out of the State. The court also noted that the State had offered to allow defendant the inspection of his own statements if he would admit them in evidence at that time, which offer he rejected, and that the State agreed that the defendant's shoes might be examined at the police station. Considering these circumstances, there was no abuse of discretion by the trial court. In fact, if such requests should be recognized and continuances granted as were demanded, great and unwarranted delays would be experienced in the administration of justice.

█ On the alleged error of the State's improper questions on voir-dire examination of prospective jurors, the following statements are challenged:

"You understand that you are representatives of your community, of Albany County, and that as such you have your duties and obligations with regard to discharging the law. You understand this. Do you feel that a newcomer to our society is, our community or our society is entitled to all the protection of the law the same as one who was born here? * * * You realize that this is an important matter in our community and it overshadows most things?"

"Do you believe that the citizens of the community, the members of our community by the very fact of being members

of the community have to give up certain things which they might like—"

"You understand the question we put to Mrs. Ebbeka, that the citizens of our community have to give up something which they might like to do by reason of living in a regulated society, and in return for giving up this the citizens of the community have an obligation and duty to afford the citizens protection. You understand that? * * * And that you as a member of the jury are —Well, you are representatives of the people of this community. You are talking for all the community when you listen to this case. * * *"

"Do you believe that in return for us as individuals having to give up certain things we might want to do that the community and the people in general have an obligation to afford us protection?"

"And that the jury as members of the community and society have a duty beyond their own personal regards to see that laws are enforced if it comes to them?"

"And we are not involved in any game at all. We are doing a community project let us say."

Upon an objection, made out of the presence of the jury, to the last two sentences, the court said:

"Gentlemen, the Court is of the opinion that both counsel have gone beyond the ordinary and usual limits in examination. The purpose as stated by the statute is to determine prejudice on the part of these jurors, and you have gone a little far, but not too far, on either side as far as I am concerned. I think the objection should be sustained without any comment to the jury or the panel, and you are instructed, Mr. County Attorney, not to use this approach in the further examination of the jury."

The trial court was, perhaps, unduly careful in such ruling. We find no valid comparison of such statements with those of

the closing argument of Espy v. State, 54 Wyo. 291, 92 P.2d 549, 558, cited by defendant, where the court tacitly condemned a statement of counsel in closing argument beginning, " 'I haven't a doubt that thousands of men and women in Sheridan County, decent men and women, whose eyes are all upon you—'." In the questions here to the prospective jurors, as we interpret them, there was a reasonable probing of the attitude of the persons questioned to ascertain their feelings concerning law enforcement. This is valid and commendable. Long since in Ross v. State, 8 Wyo. 351, 57 P. 924, 927, this court indicated that it was proper to remind a jury that its action was not personal but involved a public duty to society. Recently, we said in Pixley v. State, Wyo., 406 P.2d 662, 669, that "the examination of the juror on the voir dire should be to discover if the prospective juror was unwilling to execute the laws of the State." The questions on voir dire were proper.

The third and main point urged by defendant for reversal is the denial of his motions for directed verdict and later for judgment notwithstanding the verdict and for a new trial. This argument challenges the sufficiency of the evidence and centers on two aspects: First, the claim that there was no planned or concerted action, common purpose, or design between the three defendants and that accordingly Instruction 11, which said that if the defendants in pursuance of a design or understanding between them committed the crimes charged each was responsible for the acts of the others carrying out the design. Second, there was insufficient evidence of the corpus delicti and nothing to show any single or concerted act ascribed to defendant.

The State does not contend that there was any concert of action between the defendants Coca, Lujan, and Borrego, manifested by actual words or an oral or written compact, but of course, such was unnecessary. It was well settled by Espy v. State, supra, 92 P.2d at 557, a situation where the assault of two defendants on a victim resulted in his death, that if two persons engaged in such an assault are aiding or abetting each other in what they do, a previous understanding is not necessary to be shown in order to render each of them accountable for the other's acts. It follows, therefore, that a careful examination of the record is necessary to determine whether or not there was evidence of this at the time of the altercations immediately preceding the death of Nelson.

Defendant Coca testified that at no time on the evening of August 16 did he come in physical contact with the deceased, but numerous witnesses testified to the contrary, and there was testimony to the effect that about 11:15 p. m. the following altercation between Nelson and the defendants occurred: Nelson walked by Coca, Lujan, and Borrego, was kicked hard by Coca "in the seat." Nelson then turned around toward Coca and Lujan kicked him "in the rear." Nelson then turned toward Lujan and Lujan struck him on the face. One of the defendants had been heard to say to Nelson, " 'Come on, you're bigger than we are,' " something was said by defendants about Nelson's shoes, and they started laughing. Nelson struck no one but went and stood with his back to a wall and an off-duty patrolman, hired privately but in uniform, noticing the activity, walked toward the group and the provocators immediately dispersed and mingled in with the crowd. The patrolman did not engage in any conversation with Nelson but thought that he appeared to be relieved that the officer came and stood by, giving a sigh which to the patrolman seemed one of relief. The officer waited "for a while" and left. Nelson moved away, but was followed by Coca, Lujan, and Borrego. Coca was behind Nelson, Borrego and Lujan in front of him. Nelson was again kicked by Coca, this time between the hip and rib area. A blow was struck by either Lujan or Coca with the fist on Nelson's

stomach or chest and he was also struck on the side of the mouth. Nelson thereafter walked a few feet, staggered, and fell, apparently unconscious. Officers were called and administered artificial respiration, but Nelson did not regain consciousness.

The witness Candelaria admitted that while he was dancing he noticed the defendants talking with Nelson and pushing him around and that after the dance was over he "walked over there and * * * spread Nick Coca and Raymond Lujan and * * * kicked between the legs of Scott Nelson." He had no explanation for his actions other than that it was "maybe to show off * * * in front of Raymond Lujan and Nick Coca." It was after he kicked Nelson that the patrolman came and stood by Nelson, at which time Candelaria walked away.

■ From an analysis of these facts, it would appear that Instruction 11,[1] which is substantially similar to one given in the Espy case, was proper. It is true that the jury did not here find defendant guilty of the more serious crime, but whether or not the unprovoked, repeated attacks of the assailants against Nelson, with the striking of blows with the fists and kicking, showed an intention to kill was a question of fact which the jury was entitled to consider. Ketring v. State, 209 Ind. 618, 200 N.E. 212; State v. Lloyd, 337 Mo. 990, 87 S.W.2d 418. Even were that not so, the brief and argument contain no substantiation of prejudicial error because of the instruction. As counsel concedes, "Many courts hold such error harmless where, as here, the defendant is convicted of a lesser offense." Such was the pronouncement in State v. Goettina, 61 Wyo. 420, 158 P.2d 865, 878, where Judge Blume said that error in giving instructions as to murder is generally not ground for reversal where accused is convicted of manslaughter.

■ Concerning the proximate cause of death, Dr. Tsumagari, who conducted the autopsy, was definite in his statement that death was the result of asphyxia caused by vomitus. Dr. John R. Nye, who examined Nelson upon his arrival at the hospital and was present at the time of the autopsy, when asked how much vomitus was found in the major tubes into the lungs, said, "Probably a little less than a mouthful." Defendant argues here that there is no evidence to connect the death with any blows delivered by defendant either singly or in concert with others because the doctor conceded that there are many causes of vomiting and defendant speculates that one of these might have occasioned the asphyxia here or at least that the State failed to prove that it was caused by the activities of defendant. Nevertheless, this was also a proper matter for the determination of the jury after a consideration of all the facts and circumstances relating to the case. It is well settled that the criminal agency in felonious homicides may be established by circumstantial evidence. State v. Jensen, 120 Utah 531, 236 P.2d 445; State v. Beale, 104 W.Va. 617, 141 S.E. 7, 141 S.E. 401; Franklin v. State, 180 Tenn. 41, 171 S.W.2d 281; Commonwealth v. Sullivan, 285 Ky. 477, 148 S.W.2d 343; Outler v. State, 154 Ark. 598, 243 S.W. 851. See generally State v. Nicholes, 135 Wash. 333, 237 P. 706; State v. Le Noir, 97 N.H. 462, 92 A.2d 159. Circumstances which the jury might properly have considered included Nelson's previous good health, the various blows and kicks that he received, his apparent attitude of relief when he escaped temporarily from his assailants and his condition after the latest clash with Coca, Borrego, and Lujan, at which time he staggered, fell,

---

1. "You are instructed that if you believe the deceased was assulted [sic] by Coca, Borrego and Lujan, or any of them, in pursuance of a design or understanding between them to commit the crimes of Second Degree Murder or Manslaughter as hereinbefore defined, then each is responsible for the acts of the other in carrying out such design."

388

and became unconscious. There was sufficient evidence before the jury, which if believed, would justify a finding that the vomitus was caused by the blows from this defendant and those who were acting with him, from the fear and excitement occasioned by their activities, or from a combination of the two. Accordingly, the charge that the court erred in refusing to grant the motions of the defendant for directed verdict is without merit as is that relating to the refusal to grant a judgment notwithstanding the verdict and for a new trial.

We pass then to the criticism that the trial court erred in refusing to give proffered Instruction E, that "when a person commits an act or makes an ommission [sic] through misfortune or by accident under circumstances that show no evil design, intention or culpable negligence, he does not thereby commit a crime * *." There was no basis for such an instruction since the evidence was sufficient to warrant the jury in finding that there was an evil design of the persons who were harassing the deceased. Defendant also argues that there was error in the refusal to give Instruction F, indicating that if the death was caused by improper treatment or first aid the defendant was not responsible. This contention is without merit because of the lack of evidence in the record establishing that improper treatment or first aid contributed in any way to the death of Nelson. Neither of the offered instructions was proper under the circumstances, and the court was correct in rejecting them.

A careful review of the contended errors charged by the defendant against the trial court discloses no impropriety in the overruling of the motions for continuances and suppression, nothing that was prejudicial in the voir-dire examinations of the jurors, and a sufficiency of evidence to warrant submission of the cause to the jury.

Affirmed.