No. 19,297.

HAROLD SCHWARZ, ET AL., *v.* JOSEPH ULMER, ET AL.
(370 P. [2d] 889)

Decided April 2, 1962. May 7, 1962, Opinion modified and petition for rehearing denied.

Mr. John Stump Witcher, for plaintiffs in error.

Mr. Frank G. Stinemeyer, for defendants in error.

*In Department.*

Opinion by Mr. Justice Hall.

The parties appear here as in the trial court. We shall refer to them as plaintiffs and defendants or by name.

On December 9, 1957, the plaintiffs commenced this action seeking a judgment "quieting title" in themselves, as against the alleged unfounded claims of the defendants, to two unpatented mining claims, Honest No. 2 and Honest No. 5, both alleged to be located in the Northeast Quarter of Sec. 35, Twp. 22 S., Rg. 71 W. of the 6th P.M., Custer County, Colorado, the surface of which quarter section is owned by plaintiffs, the minerals therein having been reserved to the United States of America and being subject to location of mining claims as provided by law.

By way of further relief they ask that defendants be enjoined from asserting any rights to the lands embraced in the two claims, Honest No. 2 and No. 5.

To this complaint the defendants filed their answer and three cross-claims. For answer they deny that either of plaintiffs' claims, Honest No. 2 or No. 5, was ever validly located. They further allege that Honest No. 5 covers substantially the same area as their claim, the "Chinquinquira," herein referred to as the "Chin," which

they contend is a valid claim located and perfected pursuant to mining acts of Congress approved May 10, 1872, 30 U.S.C.A. §22 et seq., prior to plaintiffs' efforts to locate Honest No. 5, and by reason thereof the attempted location of Honest No. 5 necessarily fails because the lands therein described were not open to location, being subject to a prior valid location; that Honest No. 2 is invalid insofar as it is located on Sec. 36, Twp. 22 S., Rg. 71 W., on which section defendants have a valid mineral lease from the owner thereof, the State of Colorado, which lease renders said lands unavailable for location of mining claims.

For a first cross-claim defendants seek judgment declaring the location and possession of the Chin claim to be valid as against all claims of the plaintiffs, and that plaintiffs be enjoined from asserting any title thereto or interfering with their possession thereof.

For their second cross-claim, defendants allege that plaintiffs, prior to the commencement of this action, caused a summons to be issued by their attorney and served on defendants and others, and that no complaint was served with said summons or at all, and that said summons was vexatiously served and said action was vexatiously commenced. That defendants reasonably consulted with an attorney concerning said matter and incurred legal expense in the amount of $100.00 for which amount they seek judgment.

For their third cross-claim defendants allege that plaintiffs interfered with their possession of the Chin claim to their damage in the sum of $500.00 for which they seek judgment.

On conclusion of a pre-trial conference, the court entered an order, to which neither party objected, to the effect that:

1. Plaintiffs had not, prior to September 16, 1954 (the date defendants claim they located and posted the Chin claim), filed for record in the office of the County Clerk and Recorder of Custer County, any location certificate

for a mineral lode mining claim describing the lands encompassed in the Chin claim, or any portion thereof.

2. The plaintiffs had not, prior to September 16, 1954, staked any mining shaft or posted any discovery notice on any mining shaft located on Honest No. 2 or Honest No. 5.

3. Plaintiffs had torn down a discovery notice of the Chin claim posted at or near an old shaft and excavations located thereon.

4. Plaintiffs' mineral claim filings to Honest No. 2 and Honest No. 5 were pursuant to Colorado Session Laws 1955, page 603, section 1, rather than Session Laws 1874, page 186, section 5.

5. Two recorded amended location certificates for Honest No. 5 and one for Honest No. 2 were based upon surveys made by one Frank Lamb, registered engineer.

The parties further stipulated that:

1. The minerals in the Northeast Quarter of said Section 35 were reserved to the United States of America and were subject to location of mining claims thereon.

2. Plaintiffs own the surface of said Northeast Quarter.

3. Plaintiffs and defendants have filed required affidavits of annual assessment work or notices deferring the necessity of performing said work.

Trial was to the court and at the conclusion thereof very brief and incomplete "FINDINGS" were made and judgment entered May 28, 1959, wherein it was adjudged (1) that the mining claims, Honest No. 2 and Honest No. 5, "are hereby declared invalid"; (2) the Chinquinquira was found and adjudged invalid for the reason that "there was no finding of mineral in the shaft"; (3) the defendants recover $100.00 from plaintiffs on their second cross-claim as damages suffered by defendants in having served upon them a summons without complaint atetached, and failure of plaintiffs to file a complaint as provided by the Rules of Civil Procedure.

Though the court in its "FINDINGS" recited that the defendants' third cross-claim for damages of $500.00,

arising out of defendants being barred from access to the Chin, should be denied because of the invalidity of the Chin claim, no disposition was made thereof in the formal judgment.

Motion for new trial was dispensed with.

On June 1, 1959, defendants filed their "MOTION TO MODIFY JUDGMENT" wherein they seek to have the judge correct his findings and, failing so to do, to reopen the case for further testimony of defendant Joseph Ulmer to establish the fact that mineral was found in the Chin shaft and to prove the $500.00 damages as set forth in defendants' third cross-claim. This motion was denied August 28, 1959.

The plaintiffs are here by writ of error seeking to have their claims Honest No. 2 and Honest No. 5 declared valid and to have vacated the judgment for $100.00. The defendants assign cross-error and seek to have the Chin declared valid and to have judgment on their third cross-claim for $500.00 or, failing in this, to have the judgment of the trial court on these two matters reversed and the cause remanded for the taking of testimony of Joseph Ulmer with reference thereto and for judgment on these two claims based on the evidence presently before the court and the additional testimony of Ulmer.

Although denominated an action "to quiet title" the action is more in the nature of a possessory action.

■ The controversy involves unpatented mining claims where the most the parties can have is the right of possession, coupled with the right to mine for and remove minerals therefrom. Valid location carries with it the possessory right, coupled with the right to explore and work the property under existing laws and regulations. The real and basic question involved in possessory actions is: Which party as against the other has the better right to mine the land in question? *Lebanon M. Co. v. Con. Rep. M. Co.,* 6 Colo. 371; *Strepey v. Stark,* 7 Colo. 614, 5 Pac. 111; *Benton v. Hopkins,* 31 Colo. 518,

74 Pac. 891; *Lucky Four Gold M. Co. v. Bacon,* 62 Colo. 342, 163 Pac. 862; *Schuman v. Venard,* 110 Colo. 487, 136 P. (2d) 289. See, also, *Rundle v. Republic Cement Corp.,* 86 Ariz. 96, 341 P. (2d) 226, and authorities and cases therein cited.

Taking up first plaintiffs' claim designated as Honest No. 2, we find that there is no contention between the parties except insofar as it is located on Section 36, being the School section on which the defendants have a valid mining lease from the State of Colorado, acting through its State Board of Land Commissioners, of date earlier than the date on which the plaintiffs undertook to locate Honest No. 2. Plaintiffs concede that Section 36 is not open to location of a mining claim. Defendants concede that if Honest No. 2 is not located on Section 36, they have no interest in Plaintiffs' location thereof, and no interest in any pronouncement of the court with reference to the validity or invalidity of such location.

Such being the problem as presented by the pleadings and statements of counsel, it was imperative that the parties offer proof of their positions and that the court resolve this problem "in limine." Each side offered land surveyors' testimony as to the boundary line between Sections 35 and 36.

The testimony is uncontradicted that the original survey of Twp. 22 S., Rg. 71 W., 6th P. M., was made pursuant to Government Contract 277 dated June 2, 1875, and that there is buried in the ground a stone monument or marker of the type used in those days by Government surveyors to mark section corners, and on which marker are notations indicating that it marks the northeast corner of Section 35 and the northwest corner of Section 36 in said township and range. Testimony is uncontradicted that the marker had been in that spot for at least thirty years. Presumably the marker was used in 1875 by Government surveyors to mark the above corners.

Plaintiffs relied on the testimony of their witness

Engineer Lamb, who accepted this stone as marking the true corners and, relying thereon, located the Honest No. 2 on the assumption that the marker is now where the Government surveyors placed it and marks the true corners. So proceeding he located the east line of Honest No. 2 as the east line of Section 35 and as the boundary line between Sections 35 and 36.

The monument marking the corner, which Lamb accepted as the true corner, is in a heavily wooded area and near several trees of such size and proximity to the monument that good surveying practices even in 1875 dictated that the corner should have been tied into one or more of these trees, commonly called "bearing trees." Lamb found no markings on any of these trees and he found no mention of such in the field notes, though the same field notes, in locating the southeast corner of Section 35 and the southwest corner of Section 36, tie the corner into two nearby bearing trees.

Defendants' witness, Mitchell, District Construction Engineer, Colorado Department of Highways, at the request of the defendants and under the direction of the State Land Board, made a survey and located the point being the northeast corner of Section 35 and the northwest corner of Section 36 at a point 246.74 feet west and 3.18 feet north of the monument which Lamb had accepted as the true corner. In locating this point Mitchell had used as a starting point the authenticated southeast corner of Twp. 22 evidenced by bisecting fences where three properties join, the Forest Service, the State Land Board and a private individual, which corner is marked by a granite stone marked by six marks on the east, south and north sides, and is recognized by the Forest Service and the State Land Board and surveyors as the control point for that township.

He proceeded by solar observation, standard practice of Government surveyors for the past thirty years, to determine the true meridian; admitted by all to be a much more accurate method than that followed by Lamb

who, because of the weather being cloudy, could not take a solar observation and therefor relied on the compass needle to determine the true meridian, admittedly a very inaccurate means in a highly mineralized area such as that surveyed; he used an accurate steel tape, rather than the old type chain or stadia method used by Lamb to determine distances, ran traverse courses in a north-westerly direction and by turning angles, triangulation and trigonometric computation, located the northwest corner of Section 36.

Mitchell further testified that there is an old north-south fence located about equidistant between the point that he established as the corner and the existing monument which purports to mark the true corner involved. He also corroborated the correctness of his location of the point by reference to a United States Geological Survey map, the contours of which corresponded with the elevation of his point and were at wide variance with the stone in place which varies in elevation with his point a distance of about fifty feet.

Mr. Blankenship, Chief Forester for the State Land Board, called as a witness by the defendants, testified that there were no trees near the point established by Mitchell suitable for marking as bearing trees, which fact when considered in connection with the field notes lends credence to the suggestion that the monument which Lamb accepted as the true corner is not in the place originally set.

It thus appears that if the northwest corner of Section 36 is at the point of the location of the monument in place, then Honest No. 2, being 330 feet east and west by 1500 feet north and south, as attempted to be located, is all on Section 35, and the marked point of discovery about forty feet west of the east line of said section.

If such be the fact, then any judgment that might be entered passing on the sufficiency of the steps taken to constitute a valid location of Honest No. 2 would be useless and ineffectual, binding on no one for the reason

that the court has no one before it except defendants, who disclaim any interest in Section 35 other than their claim to the Chin.

■ If, on the other hand, the northwest corner of Section 36 is as found by Mitchell, then only the west 83.26 feet of Honest No. 2 are on Section 35, and the east 246.74 feet thereof are on Section 36. In that case the alleged point of discovery of Honest No. 2 is located 206.74 feet inside of Section 36, and Honest No. 2 must fail because of lack of discovery thereon. It is elementary that one cannot make a valid filing by virtue of a discovery of mineral on lands not open to location.

Thus the only issue with reference to Honest No. 2 before the court was to determine its location. Unfortunately the court did not resolve this question, nor did it have before it all of the abutting owners, necessary parties for making a binding and complete determination thereof. In its judgment the court merely stated:

"THE COURT HEREBY FINDS:

"That the plaintiffs, from the documentary evidence presented, did not make valid locations of the Honest No. 5 and Honest No. 2 mining claims.

\* \* \*

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the mining claims of the plaintiffs, the Honest No. 5 and the Honest No. 2, be and are hereby declared to be invalid."

Without anything in the record to indicate the reasons for declaring the Honest No. 2 invalid, we have no way of determining the correctness of the court's ruling. We do observe that the court was in error in excluding from evidence plaintiffs' Exhibits A-4 and A-5.

The evidence with respect to the point of discovery, and the boundaries of Honest No. 2 as staked, was conflicting and presents an issue as to whether this claim is located in Section 36 or in Section 35. On this point the court made no findings, and we express no opinion other than to observe that if the claim is located in Sec-

tion 36 it would be invalid, there being no discovery on public lands, and if in Section 35, there is no one before the court whose rights could be adjudicated.

Turning now to plaintiffs' claim, Honest No. 5, and Defendants' claim, the Chin, the parties are in agreement that these claims cover the same area, and that efforts to locate the Chin are prior in time to the efforts to locate Honest No. 5.

Much evidence was offered by plaintiffs to establish the validity of Honest No. 5, including plaintiffs' Exhibits A-1, A-2 and Z, which were erroneously excluded from the evidence and not considered by the court. In order to prove their claim valid it was incumbent upon them to show that the land was open to location, which necessarily involved proving the invalidity of the Chin, which it was agreed was prior in point of time. In seeking to locate Honest No. 2, the plaintiffs undertook to comply with the so-called "Map Law," C.R.S. '53, chapter 92, article 22, as amended in 1960 Per Cum. Supp. In seeking to prove the Chin invalid they offered proof of the fact that the defendants never made any discovery and particularly that they never sank a discovery shaft, as provided by C.R.S. '53, 92-22-6(1), which requires:

"Sinking a discovery shaft upon the lode to the depth of at least ten feet from the lowest part of the rim of such shaft at the surface, or deeper, if necessary to show a well defined crevice."

Defendants, in an effort to show that the location of the Chin was valid, endeavored to prove that a shaft by one Decker was sunk to the depth of ten feet or more and that the same cut and exposed a mineralized vein or lode and showed a well defined crevice, and that the mineralization was of sufficient value to warrant further development.

Defendants were not content to rely on this testimony of Decker, coupled with testimony elicited from plaintiffs' witnesses.

From the record it appears that at the close of plain-

tiffs' case the defendants moved for a summary judgment denying plaintiffs any relief, and on that motion being denied defendants requested a continuance for the purpose of presenting the testimony of the defendant Joseph Ulmer, a mining engineer, who it was represented was seriously ill and, as a consequence of such illness, unavailable as a witness. The stated purpose of his testimony was to prove their claim of having made a discovery and having sunk a discovery shaft on the Chin such as to "show a well defined crevice," and also to prove their third cross-claim for damages of $500.00 arising out of plaintiffs' alleged interference with them in seeking to do their assessment work. Plaintiffs objected to the granting of a continuance, asserting as reason therefor that defendants "knew * * * yesterday * * * Ulmer was sick." The trial court did not ask for a doctor's certificate or other proof of the alleged illness, but simply stated, "We'll go ahead with this case."

After judgment was entered, as pointed out, supra, defendants filed their motion to modify the judgment so as to find the Chin valid or, in the alternative, to reopen the case for the purpose of taking the testimony of Ulmer. This motion was denied without comment. Counsel cite as error the refusal of the trial court to grant a continuance for the production of the testimony of Ulmer.

We find that the action of the trial court in denying defendants' request for a continuance under the circumstances here presented was arbitrary and an abuse of discretion requiring reversal.

Trial was to the court, and certainly the matter could have been continued, on terms if considered proper, without injury or appreciable inconvenience to anyone, and to the end that the court might have before it all of the available facts with reference to the very matter on which it held the evidence was insufficient to establish the validity of the Chin — namely, lack of proof of discovery of mineral in the alleged discovery

shaft. Defendants' claim for $500.00 was denied on the premise that the Chin was invalid. On retrial, with full opportunity to present testimony, it might be found that the Chin is valid, in which event the claim for $500.00 damages should be reconsidered and adjudicated. . . .

Turning now to the judgment for $100.00 entered in favor of defendants and against the plaintiffs, we find nothing in the record to warrant any such judgment.

The only evidence in the record with reference to this item is the testimony of the defendant Gladys Ulmer. This testimony considered most favorable to defendants shows that in June 1957, prior to commencement of this action, Gladys Ulmer, together with Ralph Decker, Joseph Ulmer and Dorothy Newcomb, was named as a defendant in another lawsuit relating to the Chin; that she was served with a paper — a summons with no complaint attached; that she hired an attorney who sent her a bill for $100.00 in connection "with that lawsuit"; that she believes that the suit is no longer pending; that she "got some kind of a paper to the effect that it had been discontinued — dismissed, I expect"; that no complaint was served on her within ten days. She assumes that the previous action was the same as this one.

On that evidence and no more the trial court found:

"The defendants in their cross claim also ask for damages from the plaintiffs in that a similar action was filed against them by these same plaintiffs but never consummated, and that it was necessary for them to hire an attorney and lay out further costs, and the Court finds in this regard that the defendants are entitled to damages in the sum of $100.00 against the plaintiffs, and that judgment should enter herein in the sum of $100 in favor of the defendants and against the plaintiffs." Such finding does not warrant or support the judgment entered for $100.00.

Apparently the court was endeavoring to proceed under the authority of Rule 3, R.C.P. Colo., which provides:

"\* \* \* The complaint must *be filed* [not served] within 10 days after the summons is served, or the action may be dismissed without notice, *and in such* case [dismissed without notice] the court may, in its discretion, if it shall be of the opinion that the action was vexatiously commenced, *tax a reasonable attorney's fee* as costs \* \* \*." (Emphasis supplied.)

Here we have (1) no evidence as to whether the complaint was or was not *filed;* (2) no expression of the opinion by the court that the action was vexatiously commenced; (3) no evidence as to what amount would constitute a reasonable attorney's fee to be taxed as costs.

The judgment is reversed and the cause remanded to the trial court with directions to dismiss defendants' second cross-claim for $100.00, and for such further proceedings as may be required to properly determine the issues remaining undisposed of.

MR. CHIEF JUSTICE DAY and MR. JUSTICE McWILLIAMS concur.