490 So.2d 32 (1986)
Melvin NELSON, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 65279.
Supreme Court of Florida.
May 1, 1986.
Rehearing Denied July 21, 1986.
*33 Robert H. Dillinger of Dillinger & Swisher, St. Petersburg, for appellant.
Jim Smith, Atty. Gen. and Gary O. Welch, Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Nelson appeals his conviction of first-degree murder and death sentence. This Court has jurisdiction pursuant to article V, section 3(b)(1), Florida Constitution. We reverse Nelson's conviction and vacate his death sentence.[1]
The police took Nelson into custody for the April 1982 robbery of the home of Mr. and Mrs. Waldimir Baskovich and the murder of Mr. Baskovich. Mr. Baskovich, a Clearwater resident, was shot twice in the base of the skull during the robbery and died shortly thereafter at a local hospital. Law enforcement authorities alleged that the victim's murder was a contract killing carried out by Nelson and an accomplice, Robert Echols. The state tried the defendants separately, charging Nelson with murder in the first degree, robbery, and burglary.
Nelson and Echols both resided in Indiana, and the Indiana State Police cooperated with the Clearwater Police Department during the investigation. More specifically, the Indiana State Police enlisted the aid of Leonard Adams, Echols' former son-in-law, in gathering evidence as to Echols' involvement in the homicide. At the request of the Indiana authorities, Adams involved Echols in several conversations concerning the Baskovich murder. Adams secretly tape recorded the first such conversation, which took place at Echols' home. In that conversation, Echols discussed his own involvement in the murder as well as details about how he and Baskovich's brother-in-law had planned the homicide. A few weeks later, Adams and Echols had another such discussion on a Gary, Indiana street corner where Echols allegedly told Adams of "Mad Dog" Melvin Nelson's involvement in the Baskovich murder. Adams did not record this second conversation. In addition to these two conversations, Adams secretly tape recorded a third conversation in which Echols allegedly further implicated Nelson in the murder and specifically identified "Mad Dog" as the triggerman.
At trial Adams testified as to all three conversations, and the court admitted the two tapes into evidence over the objection of defense counsel. Echols, himself a defendant in a separate trial, did not testify. The jury found Nelson guilty as charged on all counts. After sentencing proceedings, the jury recommended that Nelson receive *34 a life sentence. The trial judge, however, overrode the jury's recommendation and sentenced Nelson to death.
Neither the state nor the defense disputes that Nelson was not present during any of the above-mentioned conversations. The state predicated the admission of the tape made at Echol's home by treating it as a statement against interest, an exception to hearsay under section 90.804(2)(c), Florida Statutes (1983).[2] The state contended that because Echols refused to testify and had claimed his fifth amendment privilege against self-incrimination, Echols was an unavailable declarant as section 90.804 requires.
The state's reliance on section 90.804(2)(c) in support of the tape's introduction into evidence is misplaced. Section 90.804(2)(c), which sets out the requirements for the statement against interest exception expressly states that "[a] statement or confession which is offered against the accused in a criminal action, and which is made by a co-defendant or other person implicating both himself and the accuser, is not within this exception." The language of this section could not be clearer and it unquestionably applies to the tape recorded statements in question.
Moreover, the requirements set out in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), make it clear that the admission of this tape would violate Nelson's sixth amendment right to confront witnesses against him. Echols refused to testify, and defense counsel certainly could not cross-examine a tape recording. The admission of a confession of a co-defendant who does not take the stand deprives a defendant of his rights under the sixth amendment confrontation clause. Schneble v. Florida, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972); Hall v. State, 381 So.2d 683 (Fla. 1978); Broome v. State, 194 So.2d 31 (Fla. 2d DCA 1967); Seely v. State, 191 So.2d 78 (Fla. 2d DCA 1966), cert. denied, 196 So.2d 925 (Fla. 1967). Indeed, as this Court previously stated in Hall v. State:
The fact that the defendants here were tried separately rather than jointly does not vitiate the constitutional infirmity. The crux of a Bruton violation is the introduction of statements which incriminate an accused without affording him an opportunity to cross-examine the declarant. It is immaterial whether denial of this opportunity occurs because the statements are introduced through the testimony of a third party or because the speaker takes the stand and refuses to answer questions concerning the statements.
381 So.2d at 687. As a fallback argument, the state contends that neither the requirements of section 90.804(2)(c) nor the confrontation clause were actually violated because Nelson's name never appears directly on the tape. Clearly, however, the state introduced the tape for the purpose of implicating Nelson. A defendant's name need not be expressly used to achieve this goal and trigger a confrontation clause violation. Mims v. State, 367 So.2d 706 (Fla. 1st DCA 1979); Cook v. State, 353 So.2d 911 (Fla. 2d DCA 1977), cert. denied, 362 So.2d 1052 (Fla. 1978).
The trial court also erred in admitting into evidence Adams' account of what Echols said on the Gary, Indiana street corner as well as the second taped conversation in which Echols named Nelson as the triggerman. Clearly, neither conversation could come into evidence under the statement against interest exception for the reasons *35 discussed above. The state, however, contends that the trial court properly admitted these conversations into evidence as co-conspirator admissions under section 90.803(18)(e), Florida Statutes (1983).[3] Such a contention ignores both precedent and the language of the statute itself.
The state concedes that, in order to introduce hearsay statements into evidence under the admission of a co-conspirator exception, there must be substantial independent evidence of the conspiracy and the appellant's participation in it. Damon v. State, 289 So.2d 720 (Fla. 1973); Honchell v. State, 257 So.2d 889 (Fla. 1971); State v. Wilson, 466 So.2d 1152 (Fla. 2d DCA 1985); State v. Haynes, 453 So.2d 926 (Fla. 2d DCA 1984). See § 90.803(18)(e), Fla. Stat. (1983). While the state did introduce evidence of Nelson's presence in the Baskovich home, there is insufficient nonhearsay evidence that Nelson was involved in a conspiracy to murder Baskovich. Therefore, the state did not lay the required predicate for admission of the hearsay conversations in question.
Because we find the admission into evidence of Echols' hearsay statements reversible error, we need not address the other issues which the appellant has raised. Accordingly, we vacate Nelson's death sentence and reverse his conviction. But for his death, we would remand for a new trial.
It is so ordered.
BOYD, C.J., and ADKINS, OVERTON, McDONALD, EHRLICH, SHAW and BARKETT, JJ., concur.
NOTES
[1] Although Nelson died in March 1986, we publish this opinion because the discussion of evidentiary problems may have significance in other cases.
[2] § 90.804(2)(c), Fla. Stat. (1983) reads:

Statement against interest.  A statement which, at the time of its making, was so far contrary to the declarant's pecuniary or proprietary interest or tended to subject him to liability or to render invalid a claim by him against another, so that a person in the declarant's position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is inadmissible, unless corroborating circumstances show the trustworthiness of the statement. A statement or confession which is offered against the accused in a criminal action, and which is made by a codefendant or other person implicating both himself and the accused, is not within this exception.
[3] § 90.803(18)(e), Fla. Stat. (1983), provides:

A statement by a person who was a coconspirator of the party during the course, and in furtherance, of the conspiracy. Upon request of counsel, the court shall instruct the jury that the conspiracy itself and each member's participation in it must be established by independent evidence, either before the introduction of any evidence or before evidence is admitted under this paragraph.