**David GENTRY, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. 86–50.**

Supreme Court of Wyoming.

Aug. 29, 1986.

Robert C. Wilson, Casper, for appellant.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and Gerald P. Luckhaupt, Asst. Atty. Gen., for appellee.

Before THOMAS, C.J., and BROWN, CARDINE, URBIGKIT and MACY, JJ.

MACY, Justice.

Appellant David Gentry was convicted of conspiracy to deliver a controlled substance, cocaine, in violation of §§ 35–7–1042, 35–7–1031(a), and 35–7–1016(b)(iv), W.S.1977.[1] He was sentenced to the Wyoming State Penitentiary for 15 to 36 months and fined $3,000. His sentence was reduced to 60 days, he was given cred-

---

**1.** Sections 35–7–1031(a) and 35–7–1016(b)(iv) were amended effective May 23, 1985.

it for 60 days served, and he was placed on probation for five years.

Appellant raises the following issue on appeal:

"WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO GRANT THE APPELLANT'S MOTION FOR CONTINUANCE AFTER THE APPELLEE GAVE ONE WORKING DAY NOTICE OF ADDITIONAL MATERIAL WITNESS TO BE CALLED AT THE APPELLANT'S JURY TRIAL."

We affirm.

On March 6, 1985, appellant was contacted by a friend, Joseph DeRohwer, who said that he was participating in a drug deal and needed a ride in order to locate a quarter of an ounce of cocaine. Appellant agreed and drove DeRohwer to the location where he bought the drug. In exchange for his assistance, appellant was to receive gas money and "a little dope." Upon locating and purchasing the cocaine, appellant and DeRohwer arranged a deal with a man who, unbeknown to them, was an undercover narcotics investigator for the Campbell County sheriff's office. Although the sale was never completed, appellant was later arrested and charged with conspiracy to deliver a controlled substance.

On August 29, 1985, in its response to the court's pretrial order, the State listed as its witnesses the undercover and investigating police officers. DeRohwer was a fugitive from justice at that time. On Friday, October 4, 1985, just prior to trial on Monday, October 7, the State notified appellant that DeRohwer had unexpectedly become available and would be called as a witness.

Appellant immediately filed a motion for continuance, claiming that the late addition of DeRohwer as a witness was a surprise and that a continuance was necessary to allow him to prepare an adequate defense. Appellant stated that his strategy was modified because of DeRohwer's presence. He said he required additional time in which to obtain witnesses who could refute the co-conspirator's testimony. The court denied appellant's motion for a continuance on the ground that the officers would testify to the same facts as the co-conspirator, and, therefore, appellant would not need to present additional evidence or witnesses.

This Court has consistently held that the granting of a motion for continuance is within the discretion of the trial court. *Tageant v. State*, Wyo., 683 P.2d 667 (1984); *Haight v. State*, Wyo., 654 P.2d 1232 (1982); *Sims v. State*, Wyo., 530 P.2d 1176 (1975). The standard for review, therefore, is limited to determining whether the trial court abused its discretion by denying the continuance. *Nimmo v. State*, Wyo., 603 P.2d 386 (1979); *Irvin v. State*, Wyo., 584 P.2d 1068 (1978). Our definition of abuse of discretion, as articulated in *Martinez v. State*, Wyo., 611 P.2d 831 (1980), is well established. We also recognize that review of a court's discretionary ruling on a continuance motion is highly dependent upon individual facts and circumstances. *Irvin v. State*, 584 P.2d at 1073; *Ungar v. Sarafite*, 376 U.S. 575, 84 S.Ct. 841, 11 L.Ed.2d 921, reh. denied 377 U.S. 925, 84 S.Ct. 1218, 12 L.Ed.2d 217 (1964). The party who is attacking the court's ruling bears the burden of establishing the abuse of discretion. *Buhrle v. State*, Wyo., 627 P.2d 1374 (1981). Appellant must show that the trial court's error affected his substantial rights. *Jahnke v. State*, Wyo., 682 P.2d 991 (1984).

In cases such as this where a party seeks to admit witnesses just prior to or even during trial, late endorsements have been consistently permitted in Wyoming courts. *Coca v. State*, Wyo., 423 P.2d 382 (1967); *State v. Hambrick*, 65 Wyo. 1, 196 P.2d 661, reh. denied 65 Wyo. 1, 198 P.2d 969 (1948). In *Coca v. State*, a homicide case, the prosecutor listed over a dozen additional witnesses less than one week before trial. The defense attorney sought to suppress the testimony of these witnesses, while also requesting a continuance because two witnesses were out of the state. In finding that the trial court properly denied the motions, this Court noted that the witnesses were available for questioning prior to trial. *Coca v. State*, 423 P.2d at

385. The Court also observed that the defendant knew the witnesses and had ample notice of the evidence with which he would be confronted. Id.

■ As in *Coca v. State*, appellant here fails to demonstrate an abuse of discretion in that he is unable to show that his substantial rights were affected by the denial. While he claimed in his affidavit that changing the witnesses from those listed at the pretrial conference undermined his preparation, he offers no persuasive explanation as to what he planned to accomplish with an extension. According to 17 Am. Jur.2d, Continuance § 44 at 171 (1964):

" * * * [T]he affidavit, where required, must set forth facts, not mere generalities or conclusions, and statements contained therein will generally be construed most strongly against the applicant * * *."

■ Appellant also insists that fairness demands that he be given more time to gather unspecified witnesses to rebut the co-conspirator's testimony. When the continuance request concerns the absence of witnesses, the protesting party must show that the testimony of the witnesses would be material if presented and that he has used due diligence to produce the witnesses for trial. *Tageant v. State*, 683 P.2d at 669. Appellant failed to suggest which, if any, witnesses would be added if an extension were granted. He had prepared a list of witnesses who would respond to the officers' testimony, which testimony contained the same set of facts as would be presented by DeRohwer.

" * * * A defendant is not * * * entitled to a continuance on the ground that additional time might enable him to turn up more evidence or persons willing to testify in his behalf * * *." 17 Am.Jur.2d, Continuance § 29 at 149 (1964).

■ Finally, there is no indication that the State attempted to "ambush" defense counsel with a surprise witness. DeRohwer's sudden appearance was unexpected by both parties. Appellant was notified immediately after DeRohwer was discovered, at which time the witness became available for questioning.

The delays created by a continuance must be weighed against the responsibility of providing a fair trial. If continuances are granted upon demand, "great and unwarranted delays would be experienced in the administration of justice." *Coca v. State*, 423 P.2d at 385. The trial court is in the best position to evaluate all relevant factors affecting requests for continuances—balancing individual interests against unnecessary postponements.

Appellant did not demonstrate that denial of the continuance would affect his substantial rights, and the trial court did not abuse its discretion by denying the motion.

Affirmed.

URBIGKIT, Justice, dissenting.

*Lex est norma recti:* law is the rule of right.

The issue in this case is court rejection of the constitutional rights of due process, fair hearing and equal protection by denial of a reasonable opportunity to defend a criminal charge. Ancillary, but of substantive importance, are the civil and criminal Wyoming pretrial notice rules and whether they are rendered meaningless in governing the management of criminal trials.

This is not just the normal continuance case, where the significant witness miraculously appears on Friday for a Monday trial; at issue here is the full scope of opportunity to prepare for and adequately defend a criminal charge.

### I. Events and Circumstances

David Gentry is charged that he

" * * * did unlawfully between March 6th and March 7th, 1985, in the County of Campbell, State of Wyoming, agree with one (1) or more persons that they or one (1) or more of them would commit a crime, to wit: delivery of cocaine * * *."

Gentry never possessed and no one ever delivered cocaine under this indictment. Gentry provided two rides to Joseph Michael DeRohwer, who initially agreed to make but then decided against making a

cocaine sale to undercover agent David Michael Lauck who was using the cover name of Dale Lucas. Whether or not Gentry knew that DeRohwer intended to make a cocaine sale was disputed at trial.

Following the notorious 1985 grand jury episode in Campbell County, Gentry was arrested and DeRohwer, the principal actor, apparently disappeared. Gentry pleaded innocent on June 27, 1985. The court issued a case management order on July 13, including the schedule of trial preparation, and further particularized:

"4. Not less than three (3) working days (Saturday, Sunday and Holidays excluded) prior to the pre-trial conference, each counsel will file with the Court and serve upon all other counsel (or *pro se* party):

"a. A list, with description, of all exhibits to be offered at trial; and

"b. A list of all witnesses (except rebuttal witnesses) to be called together with a short summary of the expected testimony of each; * * *

\* \* \* \* \* \*

"5. THE DEFENDANT MAY BE AFFORDED RELIEF FROM REQUIREMENTS (a) AND (b) ABOVE:

"a. For good cause shown; and,

"b. Upon a motion filed and scheduled so as to be heard at least four (4) days before the pre-trial conference; and,

"c. Only if he has timely advised the State of his unwillingness to make the disclosures and has not availed himself of any disclosures by the State pursuant to this order."

On August 12, the State filed a motion and demand for reciprocal discovery, requesting a list of defendant's witnesses, copies of witnesses' statements, reports, documents and other tangible evidence that defendant might produce at trial. The State also filed a demand for notice of alibi[1] and a response to the pretrial order, wherein the State listed no exhibits and its intent to call only two witnesses, Sheriff's Office Investigators David Lauck and Steven Hamilton.

The filing by the State of witnesses and exhibits answered requirements of the pretrial management order and of Rule 18, W.R.Cr.P., Rule 16, W.R.C.P.,[2] and the alibi disclosure rule, Rule 16.1, W.R.Cr.P., particularly subsection (b) thereof.

A pretrial conference was held on September 4, 1985, and a pretrial conference summary was filed showing "WITNESSES: as listed" and "EXHIBITS: none". The collaborator with the narcotics agent, Vincent Priest, was not listed, nor was DeRohwer, the principal in the drug buy effort. Consequently, listed witnesses for

---

1. Rule 16.1, W.R.Cr.P., reads in pertinent part: "(b) *Disclosure of information and witness.* —Within ten (10) days thereafter, but in no event less than ten (10) days before trial, unless the court otherwise directs, the attorney for the state shall serve upon the defendant or his attorney a written notice stating the names and addresses of the witnesses upon whom the state intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied on to rebut testimony of any of the defendant's alibi witnesses.

"(c) *Continuing duty to disclose.*—If prior to or during trial, a party learns of an additional witness whose identity, if known, should have been included in the information furnished under subdivision (a) or (b) the party shall promptly notify the other party or his attorney of the existence and identity of such additional witness.

"(d) *Failure to comply.*—Upon the failure of either party to comply with the requirements of this rule, the court may exclude the testimony of any undisclosed witness offered by such party as to the defendant's absence from or presence at, the scene of the alleged offense. This rule shall not limit the right of the defendant to testify in his own behalf.

"(e) *Exceptions.—For good cause shown* [emphasis added], the court may grant an exception to any of the requirements of subdivisions (a) through (d) of this rule."

2. The interrelation of Wyoming Rules of Civil Procedure, Wyoming Rules of Criminal Procedure and Uniform Rules for the District Courts of the State of Wyoming is instructive and is to be traced through Rule 1, W.R.C.P., Rule 1(a), W.R.Cr.P., Rule 52, W.R.Cr.P., and Editor's notes, Uniform Rules for the District Courts of the State of Wyoming. Apparently all rules apply except where conflict exists, in which case the more specific criminal procedure rule or the more detailed rule of the Uniform Rules for the District Courts of the State of Wyoming would apply.

the prosecution did not include either of the two other participants with the narcotics agent, whose involvement was active compared to Gentry's involvement which was at the most only passive.

On Friday, October 4, before the scheduled trial date of Monday, October 7, and in contravention of the pretrial filing and order, the district attorney's office advised defendant's counsel that DeRohwer would be presented as a witness. *No motion to amend the pretrial filing or the filing required by the alibi notice request was ever submitted by the prosecution showing good cause or otherwise.*

The record is absolutely barren of evidence of prosecution compliance with the "good cause shown" criterion of Rule 16.-1(e), W.R.Cr.P., as the exception to the witness disclosure rule. The prosecution sought relief from the witness disclosure requirement, but the burden was shifted to cast responsibility on the defendant to request a continuance. See Wright, Federal Practice and Procedure: Criminal § 203, p. 745. The court did not require of the prosecution a motion or any showing for the nondisclosed witness to be excepted from the disclosure requirements. See *United States v. Burkhalter,* 735 F.2d 1327 (11th Cir.1984). Constitutional principles relating to the enforcement of the rule against the defendant and ignoring their requirement against the prosecution should be self-evident.[3]

### II. *Motion for Continuance*

A motion for continuance *by defendant,* supported by affidavit, was prepared imme-

diately and was then filed and argued on that Friday. The issue was presented in the motion to continue and the affidavit:

"Comes now the defendant, by and through his attorney, Stephen R. Johnson, who moves for a continuance of the trial in the above captioned matter on the grounds that the State has, on this same day, advised counsel for the defendant that it intends to call Joseph Michael De Rowher [sic] as a witness for the State of Wyoming against David Gentry. This motion is based upon the attached affidavit."

"2. That trial in the above matter is currently set for 9:00 a.m. on Monday, October 7, 1985.

"3. That today I was advised that Joseph Michael De Rowher [sic], the alleged co-conspirator on the above matter, would be testifying against the defendant at trial although he was not previously listed as a witness for the State.

"4. That to my knowledge, Joseph Michael De Rowher [sic] has not even been in the State of Wyoming and has been a fugitive from justice since I undertook the representation of the defendant, David Gentry, in July of 1985.

"5. That my trial preparation is based upon the pre-trial conference, and is no longer valid. Further, I require at least one additional week for preparation in order to provide my client adequate representation as guaranteed him by the State and Federal Constitution."

The colloquy that ensued after argument was as follows:

"MR. JOHNSON: It makes a substantial difference in terms of trial preparation.

---

**3.** The effect of noncompliance by the district attorney in Campbell County could contendably have been waived by inadequate or insufficient objection to the proffered testimony of DeRohwer. If that is the justification for the inadequacy of the prosecution record then on appeal clear plain error of a constitutional stature is implicated. See *Wardius v. Oregon,* 412 U.S. 470, 472 n. 4, 93 S.Ct. 2208, 2211 n. 4, 37 L.Ed.2d 82 (1973); *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970); *United States ex rel. Hairston v. Warden,* 597 F.2d 604 (7th Cir.), cert. denied 444 U.S. 881, 100 S.Ct. 170, 62 L.Ed.2d 110 (1979); *United States ex rel.*

*Veal v. Wolff,* 529 F.Supp. 713 (N.D.Ill.1981), reversed on other grounds, *Veal v. De Robertis,* 693 F.2d 642 (7th Cir.1982); *People v. Fields,* 59 Ill.2d 516, 322 N.E.2d 33 (1974), cert. denied 423 U.S. 843, 96 S.Ct. 80, 46 L.Ed.2d 65 (1975); *Taliaferro v. State,* 295 Md. 376, 456 A.2d 29, cert. denied 461 U.S. 948, 103 S.Ct. 2114, 77 L.Ed.2d 1307 (1983), and dissent therein; Comment, *Alibi Notice Rules: The Preclusion Sanction as Procedural Default,* 51 U.Chi.L.Rev. 254 (1984); Allis, *Limitations on Prosecutorial Discovery of the Defense Case in Federal Courts: The Shield of Confidentiality,* 50 So.Cal.L.Rev. 461, 463 (1977).

If you have the co-conspirator available to testify as to the existence of a conspiracy, that's one thing. But to have a narcotics officer who, in substance, was going to testify as to statements made by the co-conspirator and that's it for their evidence, Your Honor, it's a substantial difference in trial preparation, particularly in light of the fact that perhaps those statements may be judged by the Court as hearsay and not admissible in court, even under the exceptions under, what, Rule 804, which provides for statements of co-conspirators.

"THE COURT: So, what you're saying is that now the co-conspirator is going to be testifying in person whereas before if it came in at all it would have just been—his statements would have come in through the investigating officer?

"MR. JOHNSON: If they are even admitted into evidence.

"THE COURT: Right. Right.

"MR. JOHNSON: And substantial difference in trial preparation, if the Court can appreciate that position.

    \*     \*     \*     \*     \*     \*

"THE COURT: —I don't see where there's any difference factually. Either you had some—you have some evidence to refute it or you don't. The same evidence required to refute hearsay statements if they were admitted would now just be required to refute the actual statements.

"MR. JOHNSON: Well, I guess the other problem I have, then, Judge, is that whereas before I had not contemplated even calling any witnesses on this matter—and, if I had, perhaps just the defendant himself, Mr. Gentry—it is now apparent to me that I may have to call some witnesses to deal directly with the co-conspirator, and that is a matter that I'm in the process now of trying to prepare for.

    \*     \*     \*     \*     \*     \*

"THE COURT: I'm going to deny your motion for a continuance. It doesn't seem to me that there's—you may have to change some legal theories, but I don't see where there's that much that you're going to have to change in terms of factual demonstration.

"If you want to add witnesses, I certainly would consider the fact that this came at the 11th hour. If you want to add witnesses, if you make your best effort to notify the State as soon as you know what witnesses you're going to add, I would probably allow you to do that. If you wait until Monday morning to tell the State who your witnesses will be, I would be less inclined to do so."

Any assumption of hearsay statement admissibility invokes *Lee v. Illinois,* —— U.S. ——, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986). See also *New Mexico v. Earnest,* —— U.S. ——, 106 S.Ct. 2734, 91 L.Ed.2d 539 (1986). Clearly, if such statements had existed as a confession of the principal, DeRohwer, the criteria for admissibility required by the United States Supreme Court would not have been met.

"\* \* \* If those portions of the codefendant's purportedly 'interlocking' statement which bear to any significant degree on the defendant's participation in the crime are not thoroughly substantiated by the defendant's own confession, the admission of the statement poses too serious a threat to the accuracy of the verdict to be countenanced by the Sixth Amendment. In other words, when the discrepancies between the statements are not insignificant, the codefendant's confession may not be admitted." *Lee v. Illinois,* supra, 106 S.Ct. at 2064, 90 L.Ed.2d at 529.

See *Nelson v. State,* Fla., 490 So.2d 32 (1986). A comprehensive discussion including this specific subject is found in Ponsoldt and Steering, *Accomplice Accusations in the Criminal Process: The Application of Sixth Amendment Tests for the Reliability of Hearsay Evidence to Probable Cause Determinations,* 16 Rutgers L.J., p. 869 (1985).

At 4:55 o'clock on Friday evening, the defense attorney was presented with a case of absolutely changed dimension for trial on Monday. The principal and alleged co-conspirator had now appeared to become a

witness against the individual who provided him two car rides, which events were the basis of Gentry's conspiracy involvement. The defense was suddenly faced with a witness who had just pled guilty to an unrelated charge and who would be a very cooperative witness for the prosecution.

The problem with this is that the prosecuting attorney had no statement of DeRohwer except what may have been obtained *on that day*. The only hearsay testimony which could have been introduced was the res gestae facts and, as we now know, any connection of Gentry with the transaction was at best tenuous.

"Q   And was he participating in the conversation?

"A   At the beginning, it was mostly hi, how are you doing, and a greeting. And then after that Mike DeRohwer took over the conversation and—and the defendant was affirming what Mike DeRohwer said.

*   *   *   *   *   *

"Q   Okay.  Was the defendant present during this conversation?

"A   Yes.  Again, he was within two or three feet.

"Q   Okay.  Was he participating in the conversation at all?

"A   He was again affirming what Mike DeRohwer said.

*   *   *   *   *   *

"Q   The first you had any conversations with Dave Gentry where Dave was talking and you were talking was what date?

"A   The first day that he was talking was at the 7–11 on May sixth—or, correction—March sixth.

"Q   And his talking was how are you, nice day, that type of thing?

"A   Well, it wasn't exactly that, but it was a greeting.

"Q   You had no further conversations with him?

"A   Not at that time.

"Q   How about on the seventh?

"A   Again, that was Mike DeRohwer talking in his presence and him affirming what Mike DeRohwer was saying."

Without DeRohwer in person, there could have been no hearsay presented as part of the incident, since the only specific communication by Gentry was a greeting, and otherwise his participation was to be inferred by the nonverbal "affirming". As one would expect, the testimony of Gentry was totally to the contrary in that he was not in the immediate vicinity of conversations being conducted by DeRohwer and the other unnamed person with whom he had never had any prior or subsequent contact, and did not know the subject matter involved.

Came Monday, and the trial commenced with the newly discovered Mike DeRohwer presented as a first witness—who was apparently not interviewed by defendant and who had on the prior Friday taken a plea on a nonassociated narcotics charge. He was being held in jail at that time with the apparent expectancy of a nolo contendere plea on the conspiracy events for which his testimony was to be presented against Gentry.[4]

The record does not reveal whether DeRohwer was later sentenced on the marijuana guilty plea nor whether he was ever charged in connection with the conspiracy involving the discontinued cocaine sale to the undercover agent.[5]

The State on direct examination presented two witnesses, DeRohwer and the undercover agent, David Lauck.  Gentry testified about the circumstances of his hav-

4.   The record is so insufficient as to belie belief as to the actual facts, but it does reveal that the plea taken by DeRohwer was to delivery of marijuana, and the conspiracy event invoked in the trial was a prospective delivery of cocaine.

5.   Not raised on appeal is the question of whether any crime by anyone was proved in connection with the alleged conspiracy.  That general issue, which should have been presented strongly prior to commencement of evidence and repeated by motion and argument is not now

before us by argument or brief on this appeal. *United States v. United States Gypsum Co.,* 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978); *Fiswick v. United States,* 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (1946); Marcus, *The Prosecution and Defense of Criminal Conspiracy Cases,* § 2.07 and cases therein cited, p. 2–40 (1985); id., Appendix D, § 5.03(6), Model Penal Code Sections Relating to Conspiracy.  Cf. *Apodaca v. State,* Wyo., 627 P.2d 1023 (1981).

ing provided rides to DeRohwer. A rebuttal witness was called, Deputy Sheriff Steven Hamilton, who had no knowledge about the charged events, and who was only used to challenge the credibility of Gentry by testifying to an earlier stool-pidgeon association of Gentry with the Sheriff's office in drug-related matters.

The sentence given was interesting, and by recitation its validity is not inferred:

"IT IS THE SENTENCE OF THE COURT that the defendant, David Gentry, be incarcerated in the Wyoming State Penitentiary, Rawlins, Wyoming, for a period of not less than fifteen (15) months nor more than thirty-six (36) months and be fined in the sum of three thousand dollars ($3000.00). * * *

"All but sixty (60) days of the sentence of incarceration is suspended. The defendant shall be incarcerated in the Campbell County Jail for a period of sixty (60) days, with credit for sixty (60) days previously served. The defendant is placed on probation, for a period of five years * * *."

Gentry was given a suspended 15 months to three-year sentence and a $3,000 fine and, as an additional sentence for the same offense, five years of probation.

The majority in their opinion essentially recite the testimony given by DeRohwer, which was categorically disputed by Gentry on all significant issues. Without the testimony of DeRohwer, the case had barely a scintilla of substance sufficient to justify empaneling a jury.[6] The scenario before this court is: an implausibly weak case, supported on the Friday before trial by a previously undisclosed witness whose reliability from a defense standpoint was horri-

bly suspect, with every reason to convict Gentry and no persuasive reason to tell the truth since no third-party knowledge of a conspiracy existed.

Absent that testimony, the only prosecution evidence available was that Gentry "affirmed," apparently nonverbally and simply by standing in the vicinity of DeRohwer and the undercover agent.[7]

### III. *Substantive Principles of Trial Continuance*

The cases which help define a meaningful continuance enunciate criteria for determining whether or not "there exists a violation of the sound discretion of the court." These criteria are:

(a) substantial prejudice to the litigative rights of the movant party. *Tomash v. Evans,* Wyo., 704 P.2d 1296 (1985); *Urich v. Fox,* Wyo., 687 P.2d 893 (1984); *Gonzales v. Harris,* 34 Colo.App. 282, 542 P.2d 842 (1974); *Sapp v. Wong,* 62 Hawaii 34, 609 P.2d 137 (1980); *Winkelman v. Allen,* 214 Kan. 22, 519 P.2d 1377 (1974); *Griffiths v. Hammon,* Utah, 560 P.2d 1375 (1977);

(b) presence or absence of contributory responsibility of the litigant to the prejudice. *Sharp v. Sharp,* Wyo., 671 P.2d 317 (1983); *Cates v. Eddy,* Wyo., 669 P.2d 912 (1983); *Craver v. Craver,* Wyo., 601 P.2d 999 (1979); *Conditioned Air Co. v. Post,* Colo.App., 513 P.2d 215 (1973); *Woods v. Commonwealth,* Ky., 305 S.W.2d 935 (1957); as balanced by (c) fairness and justice to the opposing litigant. *Higgins v. Johnson,* Fla.App., 422 So.2d 16 (1982); *Winkelman v. Allen, supra; Bairas v. Johnson,* 13 Utah 2d 269, 373 P.2d 375 (1962);

6. In defining a "scintilla of evidence," I relate, by overstatement but approximation, to a discussion by Judge McWilliams in *Turner v. Hammond,* 270 Md. 41, 310 A.2d 543, 553 (1973), as later recalled in *Grady v. State,* 24 Md.App. 85, 329 A.2d 726, 730 (1974), aff'd *State v. Grady,* 276 Md. 178, 345 A.2d 436 (1975):

"* * * *[I]f 'it takes ten gossamers to make a scintilla, then the appellees' evidence ... falls well short of five gossamers.' Judge McWilliams may well have been speaking of the

case now before us as we are unable to find 'five gossamers' of evidence pertaining to the assault and battery."

7. If presence in the area without participation or verbal confirmation is actually sufficient to prove conspiracy, this state should really plan on building a fence around the entire county of Carbon to accommodate the resultant penitentiary population.

(d) court docket control and maintenance, and the general necessity of reaching a conclusion. *United States v. Burton*, 189 U.S.App.D.C. 327, 584 F.2d 485 (Cir.), cert. denied 439 U.S. 1069, 99 S.Ct. 837, 59 L.Ed.2d 34 (1979); *First National Bank and Trust Company of El Dorado v. Ford Motor Credit Company*, 231 Kan. 431, 646 P.2d 1057 (1982); *Budget Laundry Company v. Munter*, 450 Pa. 13, 298 A.2d 55 (1972).

Additionally invoked in criminal cases is the application of constitutional rights afforded by the Wyoming Constitution, Art. 1, § 6:

"No person shall be deprived of life, liberty or property without due process of law,"

Art. 1, § 10:

"In all criminal prosecutions the accused shall have the right to defend in person and by counsel, to demand the nature and cause of the accusation, to have a copy thereof, to be confronted with the witnesses against him, to have compulsory process served for obtaining witnesses, and to a speedy trial by an impartial jury of the county or district in which the offense is alleged to have been committed.  *  *  *," .

and the Constitution of the United States, Amendments V, VI and XIV.

However abuse of discretion may be defined, it surely should be found if, by denying a continuance, the trial court has effectively determined the case or directed a verdict. The court in this case, by denying a continuance, simply directed a verdict of conviction for the crime charged. See *Cates v. Eddy*, supra, as a premier example of a similar result. However, that case involved only money. Cf. *Tomash v. Evans*, supra; *Urich v. Fox*, supra; *Yates v. Superior Court in and for Pima County*, 120 Ariz. 436, 586 P.2d 997 (1978); *Schwarz v. Ulmer*, 149 Colo. 601, 370 P.2d 889 (1962); *Sapp v. Wong*, supra; *First National Bank & Trust Company v. Ford Motor Credit Company*, supra.

The principle is strongly stated by Justice Roberts in his concurring opinion in *Budget Laundry Company v. Munter*, supra, 298 A.2d at 59–60:

"  *  *  *  I desire to express my strong disagreement with any rule of court which subordinates the quality of justice to the hazards of arbitrary insistence upon an 'assemblyline' disposition of cases.  Such inflexibility neither serves the interests of justice nor advances the proper objectives of effective court administration.  As was so eloquently stated by Judge Jerome Frank:

" 'The law is not a machine and the judges not machine-tenders.  There never was and there never will be a body of fixed and predetermined rules alike for all.  The acts of human beings are not identical mathematical entities; the individual cannot be eliminated as, in algebraic equations, equal quantities on the two sides can be cancelled.  Life rebels against all efforts at legal over-simplification ... To do justice, to make any legal system acceptable to society, the abstract preestablished rules have to be adapted and adjusted, the static formulas made alive.'

"Jerome Frank, Law and the Modern Mind, p. 120."

The constitutional principle which is invoked was synthesized by the conclusion of the federal court in *United States v. Burton*, supra, 584 F.2d at 489:

"Thus, the trial judge may not insist on such expeditiousness that counsel for the defendant lacks reasonable time to prepare for trial; stripping away the opportunity to prepare for trial is tantamount to denying altogether the assistance of counsel for the defense."

The result achieved is the denial of the Sixth Amendment right to assistance of counsel. *Powell v. Alabama*, 287 U.S. 45,

53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527 (1932).[8]

The subject of requiring a continuance on occasion to afford due process, fairness and justice is not without case authority. *Bennett v. Scroggy*, 793 F.2d 772 (6th Cir. 1986); *Gonzales v. Harris*, supra; *Griffiths v. Hammon*, supra.

> "So, it would seem that the 'unalienable rights' of life and liberty of a defendant in a criminal case are carefully safeguarded by the Sixth Amendment. In the portion of the Amendment we are considering, it is evident that the protection given to a criminal defendant is the adequate assistance of counsel whereby he will have a full, fair trial under the law. In other words, have his 'day in court.'" *United States v. Johnston*, 318 F.2d 288, 291 (6th Cir.1963).

> "* * * Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. *Chandler v. Fretag*, 348 U.S. 3, 99 L.Ed. 4, 75 S.Ct. 1 [1954]." *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841 [849], 11 L.Ed.2d 921, reh. denied 377 U.S. 925, 84 S.Ct. 1218, 12 L.Ed.2d 217 (1964).

### IV. *Prosecution Compliance With Pretrial Process*

Differing from what is said in this court's opinion, the reappearance of DeRohwer is undocumented in the record as to date, circumstance or place, except that he was in Wyoming for approximately two months prior to the trial date and that apparently on Friday, October 4, pled to the nonassociated charge of delivery of marijuana.[9]

In addition to the broad reach of the constitutional questions, Wyoming has: a specific rule on pretrial practice; Rule 601, Uniform Rules for the District Courts of the State of Wyoming; Rule 16, W.R.C.P., which is similar to Rule 16, F.R.C.P.; and Rule 19, W.R.Cr.P., similar to Rule 17.1, F.R.Cr.P.

The additional issue created by this decision is whether the obligation to demonstrate prejudice from violation of pretrial orders and processes is charged against the nonviolating party. Cavalier disregard of the basic intent of pretrial processes to simplify and establish evidence issues, designate witnesses and define documents consequently emasculates the rules. Any blithe assumption that a critical witness can be presented within days of trial without any amendatory filing or cause shown, leaving to the respondent the requirement to put together and define the total scope of prejudicial result is abhorrent and precedentially unjustified.

This court has previously said that a motion for a continuance is a more appropriate remedy than a mistrial, and now, where a motion for continuance is requested in accord with this court's direction, the majority of this court say that trial court discretion justifies denial of that real opportunity to adequately defend. *Simms v.*

---

**8.** See also *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *Geders v. United States*, 425 U.S. 80, 88, 96 S.Ct. 1330, 1335, 47 L.Ed.2d 592 (1976); *Faretta v. California*, 422 U.S. 806, 807, 95 S.Ct. 2525, 2527, 45 L.Ed.2d 562 (1975); *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733 (1963); *Betts v. Brady*, 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942), overruled on other grounds in *Gideon v. Wainwright*, supra; *Glasser v. United States*, 315 U.S. 60, 69–70, 62 S.Ct. 457, 464–65, 86 L.Ed. 680 (1942); *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357 (1938).

**9.** The hesitancy, insufficiency and disjointed nature of the cross-examination of DeRohwer, stridently demonstrated by the transcript, can be explained by the obviously insufficient time for defense counsel to inquire about DeRohwer and to prepare for the trial. Second-guessing from cold transcripts is always a temptation, but far too many unanswered questions can be reconstructed. Vastly experienced Wyoming trial lawyers would likewise encounter difficulty under the circumstances, although it is likely that with sufficient argument and continued objection at least some continuance would have been afforded. Failure to request a continuance would have established incompetency of the highest degree since adequate opportunity to defend simply did not then exist in the real world of jury trial preparation and performance. *Kimmelman v. Morrison*, —— U.S. ——, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986).

*State,* Wyo., 492 P.2d 516, cert. denied 409 U.S. 886, 93 S.Ct. 104, 34 L.Ed.2d 142 (1972). See also *Nation v. Nation,* Wyo., 715 P.2d 198 (1986); and *Nimmo v. State,* Wyo., 607 P.2d 344 (1980).

This court well stated the intended philosophy in *Rhoads v. Gilliland,* Wyo., 514 P.2d 202, 203 (1973):

" * * * A pretrial conference is not a trial on the merits, its purpose being to eliminate surprise and to simplify issues of the case, thereby facilitating the trial on the merits."

"The pretrial conference authorized by Rule 16 is designed to familiarize the litigants and the court with the issues actually involved in a lawsuit so that the parties can accurately appraise their cases and substantially reduce the danger of surprise at trial. The importance of this objective should not be underemphasized. As stated by Judge Laws in an address before the Judicial Administration Section of the American Bar Association at Philadelphia, Pennsylvania in 1940:

" 'One of the vital, if not the outstanding, advantages of pretrial procedure is to take the trials of cases out of the realm of surprise and maneuvering, whereby an unwary counsel might see the just case of his client lost. It may be romantic and charming to watch the skillful trial lawyer as he lies in wait to pounce upon an uninformed and less skillful counsel, but the results frequently are not just.' " Wright & Miller, Federal Practice and Procedure: Civil § 1522.

In a march to affirm criminal convictions, this court should not decimate the orderly practice developed through pretrial as a method for both simplification of the justice process and the expeditious resolution of controversies.

### V. *Sufficiency of Continuance Request*

Additionally to be deplored is the implication that the result can be affirmed based on the insufficiency of the motion and affidavit.[10] Some time that Friday morning, the attorney received notice of the unexpected witness, whereupon he immediately prepared the motion and affidavit, and spent the afternoon waiting for an opportunity to appear before the trial court for oral presentation. Whether or not more time might have provided defense counsel a greater capability to defend the totally unexpected, his motion and affidavit were certainly adequate under the circumstances. The defendant deserved a sufficient continuance to allow him an opportunity to defend.

The suggestion is made both by the trial court and now by this decision that the witness replaced otherwise available documents which could have been utilized under hearsay exceptions. It is obvious from the record itself that these documents did not exist, and consequently the odd argument of substitute admissibility is without merit and is factually strange. I would also question whether DeRohwer was in fact available for questioning by counsel between 4:55 p.m. on Friday, when the hearing ended, and 9:00 a.m. on Monday, when the trial commenced. Absolutely no evidence of either availability or interview is contained in the record. Even if DeRohwer could have been interviewed, counsel would not have had an opportunity to subpoena witnesses who might have been helpful to add support to his defense after DeRohwer was presented as the first witness on Monday morning in a trial that lasted only one day.

### VI. *Conclusion*

Whether or not justice may have been served by the five-year probationary sentence and the concurrent suspended prison sentences in recognition of the troublesome history of Mr. Gentry, this case personifies a clear disregard of fundamental constitutional rights and rejection of an established procedural rule. Justice may be illusory, but the right to a fair hearing should be in the reasonable expectancy of every litigant. At the least, Gentry did not get a fair trial; at the most it is questionable whether he

---

10. Defendant specifically complied with the spirit of Rule 201, Uniform Rules for the District Courts of the State of Wyoming, by filing a motion supported by counsel's affidavit. Cf. as a rule of right to defend, Rule 56(f), W.R.C.P. See *Nation v. Nation,* supra.

was guilty of any criminal offense within the confines of the conspiracy charged.

I would reverse.